UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITECRYPTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ARXAN TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 15-cv-00754-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 23 |

## INTRODUCTION

Counter-defendant Intertrust Technologies Corporation moves to dismiss defendant and counterclaimant Arxan Technologies, Inc.'s breach of contract counterclaims on the grounds that it is not liable for the contractual obligations of its subsidiary, plaintiff and counter-defendant whiteCryption Corporation, the party to the contract. Because Arxan did not allege sufficient facts to show that whiteCryption was acting as Intertrust's agent with respect to the conduct at issue, that Intertrust and whiteCryption were alter egos, or that Intertrust ratified whiteCryption's conduct, its breach of contract counterclaims against Intertrust are DISMISSED WITH LEAVE TO AMEND.

## BACKGROUND

whiteCryption and Arxan provide data protection solutions. In February 2015, whiteCryption sued Arxan for breach of contract, copyright infringement, and related business torts. Compl. [Dkt. No. 1]. Arxan filed counterclaims against whiteCryption and its parent company, Intertrust for (i) breach of contract – software license agreement; (ii) breach of contract – reseller agreement; (iii) copyright infringement; (iv)-(v) intentional interference with contractual relations; (vi) intentional interference with prospective economic advantage; and (vii) unfair competition. Counterclaims [Dkt. No. 18].

Only the first two counterclaims for breach of contract are at issue here. They arise from two contracts between Arxan and whiteCryption—a software license agreement entered into on

1  December 13, 2011 and a reseller agreement entered into on June 2, 2011. *Id.* ¶ 2. Arxan alleges
2  that whiteCryption breached the software licensing agreement by improperly using the licensed
3  technology to "develop, market and deploy a competing product under [whiteCryption's] brand."
4  *Id.* ¶ 3. Arxan contends that whiteCryption breached the reseller agreement by failing to provide
5  ongoing support and maintenance to customers in accordance with the contract, directly
6  communicating with and soliciting Arxan's customers, and improperly disclosing that the software
7  product distributed by Arxan was made by whiteCryption. *Id.* ¶ 4. Arxan names both
8  whiteCryption and its parent company, Intertrust, as counter-defendants, alleging that Intertrust is
9  liable for whiteCryption's conduct because "whiteCryption was, at all relevant times, acting under
10 Intertrust's directions when it carried out the unlawful acts alleged in this Counterclaim." *Id.* ¶ 12.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

2

by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the Court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

Intertrust moves to dismiss Arxan's breach of contract counterclaims on the grounds that it is not a party to either the license agreement or the reseller agreement and there is no theory under which it can be liable.[1] In opposition, Arxan argues that Intertrust is liable under an agency theory.

### I. LIABILITY OF PARENT COMPANIES UNDER AGENCY THEORY

It is "a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal citations and quotations omitted). Accordingly, parent corporations are held directly or indirectly liable under California law for the acts of their subsidiaries only in unusual situations. Federal courts in California have recognized three such situations:

> (i) Where the circumstances of the organization of the two entities are such that the corporate form should be disregarded ("alter ego" liability);
>
> (ii) where the subsidiary acts as an agent of the parent corporation; or
>
> (iii) where the parent corporation aids, abets, or ratifies the acts of the subsidiary corporation.

*E. & J. Gallo Winery v. EnCana Energy Services, Inc.*, 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008) (citing *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1235 (N.D. Cal. 2004)).

---

[1] Intertrust has not moved to dismiss Arxan's other counterclaims. The eighth counterclaim, for declaratory relief, is only asserted against whiteCryption.

3

The parties only briefed the agency theory of liability.[2]  A subsidiary company may be considered an agent of the parent corporation where "the parent so controls the subsidiary as to cause the subsidiary to be [sic] become merely the instrumentality of the parent." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009) (citation omitted). To meet this standard, "the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's *day-to-day* operations in carrying out that policy." *Barrous v. BP P.L.C.*, 10-cv-02944-LHK, 2011 WL 4595205, at *4 (N.D. Cal. Oct. 3, 2011) (citation omitted).  An agency relationship may also be established by showing that "the subsidiary performs services that are sufficiently important to the [parent] corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Id.* (internal quotations omitted).  The agency inquiry "should focus on the relationship between the parent and subsidiary corporation surrounding the conduct that gives rise to the plaintiff's claim;" a "financial link" between the parent and subsidiary companies, without more, is not enough to establish an agency relationship.  *Id.* at *5.

## II. ARXAN HAS NOT ADEQUATELY ALLEGED AGENCY LIABILITY

Arxan alleges that whiteCryption is a subsidiary of Intertrust; that whiteCryption and Intertrust have overlapping management and key employees; and that Intertrust's managers were involved in many of the communications surrounding the formation of the software license agreement and reseller agreement.  Counterclaims ¶ 11.  These allegations are not sufficient to establish liability under an agency theory.  *See, e.g., Bestfoods*, 524 U.S. at 70 (parent-subsidiary relationship and overlapping directors, without more, does not establish agency); *Bastidas v. Good Samaritan Hosp.*, 13-cv-04388-SI, 2014 WL 3362214, at *4 (N.D. Cal. July 7, 2014) (dismissing claims against parent company where plaintiff did not adequately allege that overlapping executives acted in parent's interests); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 929 (9th Cir.

---

[2] Arxan does not allege that Intertrust is liable under the "alter ego" theory, though it maintains that it may discover facts that allow it to prove the existence of an alter ego relationship.  Despite the lack of briefing on the aiding, abetting or ratifying issue, I discuss it in Section III, below.

2011) (relationship between parent and subsidiary companies does not necessarily imply an agency relationship).

As the Supreme Court stated in *Bestfoods*:

> [I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts. . . . directors and officers can and do change hats to represent the two corporations separately, despite their common ownership. []
> *[C]ourts generally presume that the directors are wearing their subsidiary hats and not their parent hats when acting for the subsidiary.*

524 U.S. at 70 (emphasis added and internal citations omitted). "To defeat this presumption, a plaintiff would need to allege facts demonstrating that the dual status individuals were acting in the parent's interest, and not the subsidiary's, when they engaged in the challenged conduct." *Bastidas*, 2014 WL 3362214, at *4.

The cases cited by Arxan do not support its position. Only *Bowoto* and *Dion v. Infotek Wireless, Inc.*, 07-cv-1431-SBA, 2007 WL 3231738 (N.D. Cal. Oct. 30, 2007), involve allegations of an agency relationship between two companies, and those cases are inapposite. *Bowoto* involved an extensive factual inquiry on a motion for summary judgment and does not establish a standard for pleading agency. *See Bowoto*, 312 F. Supp. 2d at 1233. *Dion* involved agency allegations against two sister corporations, not parent and subsidiary companies, and included factual allegations which the court deemed sufficient to support agency liability. *See Dion*, 2007 WL 3231738 at **1, 4 (complaint alleged that "[sister company] created [other sister company] and sought the Consulting Agreement with [plaintiff] as a vehicle for funding and growing [sister company's] existing business"). That is not the case here.

At oral argument, counsel for Arxan argued that its allegations are not subject to the *Bestfoods* presumption because several Intertrust managers who were involved in either breaching or forming the contracts at issue were not also whiteCryption employees and therefore could not have been wearing their whiteCryption "hats" during the conduct at issue. He referenced Arxan's allegations that Intertrust's CEO informed Arxan's CEO "that whiteCryption would not honor its obligation to provide ongoing maintenance and support for remaining customers for the length of

5

their existing Arxan customer contracts;" that Intertrust's Senior Vice President informed an analyst that the "white-label whiteCryption product sold under Arxan's brand, was actually an Intertrust product;" and that a general manager of Intertrust Europe tried to convince Arxan customers to replace Arxan products with Intertrust products. Counterclaims ¶¶ 50, 58, 63.

Without more, these allegations involve conduct which is too sporadic to establish the necessary day-to-day control over whiteCryption's contractual relationship with Arxan to support a reasonable inference that whiteCryption was merely an instrumentality of Intertrust. *See Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 542 (2000) ("the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's *day-to-day* operations in carrying out that policy") (emphasis in original); *Wallis v. Centennial Ins. Co., Inc.*, 2013 WL 3803971, at *4 (E.D. Cal. July 19, 2013) (plaintiffs survived a motion to dismiss because they alleged facts establishing that the parent company's control over the subsidiary was "pervasive and continual," such as the parent company assuming full control and responsibility for all correspondence and activities related to the defense of a lawsuit against the subsidiary).

## III.   AIDING, ABETTING AND RATIFICATION

Nor do Arxan's allegations support a ratification theory of liability. "Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him." *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972). Arxan's allegations do not plausibly allege that Intertrust adopted the contract and whiteCryption's alleged breaches of it as its own.

While Arxan argues that its counterclaims contain allegations sufficient to satisfy the aiding and abetting standard, it has not identified the standard nor described how its allegations are sufficient. I assume that the pertinent allegations are the same ones as discussed above. However, Arxan provided no authority, and I am aware of none, recognizing a cause of action for aiding and abetting a breach of contract under California law. *Bowoto*, which Arxan relies on, involved alleged human rights abuses, not breach of contract. *Bowoto*, 312 F. Supp. 2d at 1247. Other

California cases discussing aiding and abetting liability in a civil context likewise involve tort claims, not breach of contract.[3]  *See, e.g.*, *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93 (2007).

whiteCryption's allegations may support its causes of action against Intertrust for intentional interference with contractual relations and prospective economic advantage, and unfair competition, but they do not plausibly show that Intertrust made and breached a contract with whiteCryption or ratified it.  Arxan has asserted no facts suggesting that whiteCryption's and Intertrust's overlapping management acted solely in Intertrust's, not whiteCryption's, interest in forming or purportedly breaching the contracts.  It has not alleged sufficient facts to overcome the *Bestfoods* presumption that the directors at issue were wearing their "subsidiary" as opposed to "parent" hats at the relevant time.  *See Bestfoods*, 524 U.S. at 70; *Bastidas*, 2014 WL 3362214, at *4.  Accordingly, its breach of contract counterclaims are DISMISSED.

## CONCLUSION

Intertrust's motion to dismiss is GRANTED.  Arxan's counterclaims for breach of the software license agreement (first cause of action) and breach of the reseller agreement (second cause of action) are DISMISSED WITH LEAVE TO AMEND.  Any amended counterclaims shall be filed within 20 days of this order.

**IT IS SO ORDERED**.

Dated: June 18, 2015

WILLIAM H. ORRICK
United States District Judge

---

[3] Other states also do not recognize claims for aiding and abetting a breach of contract.  *See, e.g.*, *Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 193 (Del. Ch. 2014) ("Delaware generally does not recognize a claim for aiding and abetting a breach of contract."); *Pomerance v. McGrath*, 124 A.D.3d 481, 484 (N.Y. App. Div.) ("no cause of action exists for aiding and abetting a breach of contract"); *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 413 n.6 (7th Cir. 2000) ("counsel cites, and we have discovered, no Illinois case recognizing a cause of action for aiding and abetting a breach of contract"); *R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, 2013 WL 2217831, at *8 (D. Ariz. May 20, 2013) ("Prasad has provided no authority—and the Court has found none—recognizing a cause of action for aiding and abetting a breach of contract").